UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CLIVE GRAHAM,

     **PLAINTIFF,**

   - against –

SELECT PORTFOLIO SERVICING, INC., and
U.S. BANK NATIONAL ASSOCIATION,
INDIVIDUALLY, AND AS TRUSTEE ON
BEHALF OF THE HOLDERS OF THE HOME
EQUITY PASS-THROUGH CERTIFICATES,
SERIES 2006-4,

     **DEFENDANTS.**
_____

         **15-cv-183(JGK)**

         <u>OPINION & ORDER</u>

**JOHN G. KOELTL, District Judge:**

   The plaintiff, Clive Graham, alleges twelve causes of action against the defendants, U.S. Bank National Association ("U.S. Bank") and Select Portfolio Servicing, Inc. ("SPS"). SPS was the servicer for a mortgage on Graham's home. Graham claims that even though he entered into a loan modification with SPS and made payments on the modified loan, U.S. Bank, the Trustee of the Trust that held the mortgage, foreclosed on the mortgage. In his Verified Complaint, Graham alleges various claims for fraud, breach of contract, and specific performance relating to his alleged loan modification agreement with SPS as well as challenges to the validity of the foreclosure by U.S. Bank. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the defendants moved to dismiss with prejudice Graham's claims for lack of subject matter jurisdiction and for

failure to state a claim. For the reasons explained below, **the motion is granted.**

## I.

When presented with motions under both Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); Abrahams v. App. Div. of the Sup. Ct., 473 F. Supp. 2d 550, 554 (S.D.N.Y. 2007), aff'd on other grounds, 311 F. App'x. 474 (2d Cir. 2009); see also S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009).

To prevail against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz

2

Images, Inc., No. 02-cv-4645 (KMK), 2006 WL 1140724, at *2
(S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are
disputed, the Court has the power and the obligation to consider
matters outside the pleadings, such as affidavits, documents,
and testimony, to determine whether jurisdiction exists. See
APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am.
Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so
doing, the Court is guided by that body of decisional law that
has developed under Federal Rule of Civil Procedure 56. Kamen,
791 F.2d at 1011; see also McKevitt v. Mueller, 689 F. Supp. 2d
661, 664-65 (S.D.N.Y. 2010); Rorech, 673 F. Supp. 2d at 220-21.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Rullan v. New York City, Dep't of Sanitation, No. 13-cv-5154 (JGK), 2014 WL 2011771, at *1 (S.D.N.Y. May 16, 2014), aff'd, 607 F. App'x 86 (2d Cir. 2015); Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012).

## II.

The following facts are taken from the Verified Complaint and are accepted as true for purposes of the defendants' motion to dismiss.

The plaintiff's claims arise out of a foreclosure commenced in the New York State Supreme Court, Westchester County. Verified Compl. ¶ 1. Graham resides in Westchester County, and SPS, a mortgage loan servicer, is a resident of Utah. Verified Compl. ¶¶ 2, 4. U.S. Bank resides in Minnesota and is the trustee for the Home Equity Asset Trust 2006-4 Home Equity Pass-Through Certificates, Series 2006-4. Verified Compl. ¶¶ 5-6.

The Verified Complaint alleges that on October 31, 2005, Graham executed a mortgage secured by his home in Mount Vernon and delivered the mortgage and the security instrument to Encore Credit Corp. Verified Compl. ¶ 15(2). The mortgage was recorded in Westchester County on or about February 3, 2006. Verified Compl. ¶ 16. As a result of an assignment from Encore Credit, U.S. Bank claims to be the owner and holder of the mortgage. Verified Compl. ¶ 10.

Graham became unable to make the monthly mortgage payments and defaulted on his loan payments. On or before January 2010, SPS allegedly offered Graham a loan modification for his mortgage which was allegedly held by U.S. Bank as Trustee for the Trust. Verified Compl. ¶¶ 18, 31. SPS and Graham allegedly entered into a loan modification agreement, and the agreement was recorded in Westchester County. Verified Compl. ¶¶ 19-20. Graham's monthly payments under the loan modification agreement

were $2,537.00, and Graham allegedly made five mortgage payments
to SPS pursuant to the loan modification agreement for a total
of $12,685.00. Verified Compl. ¶¶ 21, 23. The Verified Complaint
alleges that even after Graham made the loan modification
payments, U.S. Bank initiated a foreclosure action against
Graham on or about January 14, 2010. Verified Compl. ¶ 25. U.S.
Bank obtained a judgment of foreclosure and sale, and a public
auction sale was allegedly scheduled for January 23, 2015.
Verified Compl. ¶ 27.

    According to the Verified Complaint, the defendants never
advised Graham whether the loan modification had become
effective, but nevertheless continued to accept Graham's
mortgage payments. Verified Compl. ¶ 35. Graham alleges that but
for the fraudulent misrepresentation and concealment of material
facts by the defendants or their agents, he would not have
entered into the loan modification agreement nor would he have
damaged his credit or faced a foreclosure action. Verified
Compl. ¶¶ 39-41. The plaintiff seeks compensatory damages in an
amount greater than $75,000 and punitive damages of $10 million.
Verified Compl. ¶¶ 42, 45.

    Graham brings the following claims against the defendants:
(1) a cause of action against SPS and U.S. Bank for fraud,
Verified Compl. ¶¶ 30-45 (Count 1); (2) a cause of action for

breach of contract against SPS, Verified Compl. ¶¶ 46-52 (Count 2); (3) a cause of action against SPS for violation of the implied covenant of good faith and fair dealing under New York law, Verified Compl. ¶¶ 53-56 (Count 3); (4) a cause of action against SPS and U.S. Bank for unjust enrichment, Verified Compl. ¶¶ 57-59 (Count 4); (5) a cause of action against SPS and U.S. Bank for conversion, Verified Compl. ¶¶ 60-66 (Count 5); (6) a cause of action against SPS for deceptive business practices, Verified Compl. ¶¶ 67-71 (Count 6); (7) a cause of action against U.S. Bank alleging violations of the securities laws, Verified Compl. ¶¶ 72-84 (Count 7); (8) a cause of action against U.S. Bank alleging debt collection law violations, Verified Compl. ¶¶ 85-90 (Count 8); (9) a cause of action against U.S. Bank alleging violations of the False Claims Act, Verified Compl. ¶¶ 91-93 (Count 9); (10) a cause of action against U.S. Bank for aiding and abetting securities fraud, Verified Compl. ¶¶ 94-112 (Count 10); (11) a cause of action against U.S. Bank for civil rights violations, Verified Compl. ¶¶ 113-27 (Count 11); and (12) a cause of action against U.S. Bank seeking an injunction to restrain a public auction pursuant to a foreclosure action of Graham's property, Verified Comp. ¶¶ 128-33 (Count 12).

**III.**

The plaintiff generally has two sets of claims. In one set of claims, Counts 7-12, Graham asserts that U.S. Bank lacked standing to pursue the foreclosure action because the assignments by which it purportedly obtained its interest in the mortgage were invalid. Graham therefore contends that U.S. Bank's representations about the foreclosure and its actions in pursuing the foreclosure were invalid. The second set of claims, Counts 1-6, are asserted primarily against SPS and are based on the alleged loan modification agreement. These claims allege that SPS violated the loan modification agreement, or was deceptive in keeping the funds or violated other duties in connection with that alleged agreement. Among other grounds, the defendants move to dismiss both sets of claims because they seek to invalidate the mortgage foreclosure judgment in violation of the Rooker Feldman doctrine and preclusion principles.

**A.**

The major argument by U.S. Bank to dismiss Counts 7-12 against it is that the Counts impermissibly seek to challenge the mortgage foreclosure judgment of the New York State Court. Federal district courts generally lack subject matter jurisdiction over suits "that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cty. Bd. of Elections,

422 F.3d 77, 84 (2d Cir. 2005); Phillips ex rel. Green v. City of New York, 453 F. Supp. 2d 690, 712-13 (S.D.N.Y. 2006). Within the statutory structure of the federal judiciary, district courts are "empowered to exercise original, not appellate, jurisdiction." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005); Phillips, 453 F. Supp. 2d at 713. The Supreme Court of the United States has the exclusive authority to review state court judgments. See Exxon Mobil, 544 U.S. at 292; Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n. 3 (2002).

The doctrine embodying these principles, the Rooker Feldman doctrine, is named for the two Supreme Court decisions in which these principles were originally applied, Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923) and Dist. of Columbia Ct. of App. v. Feldman, 460 U.S. 462 (1983). Recently, in Exxon Mobil, the Supreme Court clarified the scope of the doctrine, stating that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284.

Following <u>Exxon Mobil</u>, the Second Circuit Court of Appeals articulated the following four requirements for the application of the <u>Rooker Feldman</u> doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." <u>See</u> <u>Hoblock</u>, 422 F.3d at 85 (alterations omitted); <u>see also</u> <u>McKithen</u> <u>v. Brown</u>, 481 F.3d 89, 96-97 (2d Cir. 2007); <u>Phillips</u>, 453 F. Supp. 2d at 713. If all of these conditions are met, the district court lacks subject matter jurisdiction over the claim. <u>See</u> <u>Melnitzky v. HSBC Bank USA</u>, No. 06-cv-13526 (JGK), 2007 WL 1159639, at *7 (S.D.N.Y. Apr. 18, 2007).

Because the defendants move to dismiss on <u>Rooker Feldman</u> grounds, it is appropriate to consider the procedural history of the state court mortgage foreclosure proceeding.[1] The plaintiff

---

[1] Graham argues that the Court should not rely on the exhibits the defendants included with their papers in support of their motion to dismiss under Rule 12(b)(1) and 12(b)(6). It is well-established that a court may rely on documents outside the pleadings when deciding whether it has subject matter jurisdiction. <u>Lawtone-Bowles v. City of New York, Dep't of Sanitation</u>, 22 F. Supp. 3d 341, 345 (S.D.N.Y. 2014) ("Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists."). In deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents. <u>See, e.g.</u>, <u>Russ v. Alt. Loan Tr. 2006-43-CB Mortgage Pass Through Certificates 2006-43-CB</u>, No. 14-cv-2990 (CM), 2014 WL 3703870, at *1, 3 (S.D.N.Y. July 23, 2014); <u>Koch v. Christie's Int'l PLC</u>, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) ("[C]ourts can consider court documents or matters of

appears to have originally defaulted in responding to the
foreclosure action in the New York State Supreme Court,
Westchester County. U.S. Bank then moved for an Order of
Reference, which Graham opposed with a cross motion to dismiss,
seeking to vacate his default and to dismiss the foreclosure
complaint for lack of standing. McCord Decl., Ex. I. As
explained in greater detail below, on December 5, 2012, the
state court granted U.S. Bank's motion and denied Graham's
motion. McCord Decl., Ex. J. On June 13, 2013, U.S. Bank moved
for a judgment of foreclosure and sale. Graham opposed the
motion, arguing that U.S. Bank lacked standing. McCord Decl.,
Ex. K. The state court granted U.S. Bank's motion on April 2,
2014. McCord Decl., Ex. L. The judgment of foreclosure and sale
was entered on August 28, 2014. McCord Decl., Ex. M. The
property was sold at a public auction on January 16, 2015.
McCord Decl., Ex. N.

     The Court lacks jurisdiction over Counts 7-12 which
challenge U.S. Bank's standing to bring the mortgage foreclosure
action. The claims are barred by the <u>Rooker Feldman</u> doctrine. It
is plain that Graham lost in the state court proceeding and that
the proceeding took place before Graham brought this case in

---

public record at the motion to dismiss stage where both parties had notice of
their contents and the documents are integral to the complaint."), <u>aff'd</u>, 699
F.3d 141 (2d Cir. 2012).

federal district court. See Pelsinger Decl., Ex. 4, at 3 (state court decision dated April 2, 2014); Verified Compl. ¶¶ 27, 120. Thus, the procedural requirements of the Rooker Feldman doctrine are met. See Hoblock, 422 F.3d at 85, 89.

The substantive requirements of the Rooker Feldman doctrine are also satisfied because Graham complains of injuries caused by the state court proceeding. He claims that U.S. Bank had no standing to obtain the foreclosure because it relied on two invalid assignments. He argues that U.S. Bank "proceeded with the foreclosure and presented two different assignments . . . to the Supreme Court in order to obtain a judgment of foreclosure and sale and effectively steal Plaintiff's property from him." Pl.'s Mem. of Law in Opp'n to Mot. at 3. To remedy this injury, the Court would be required to review and re-adjudicate Graham's claim that U.S. Bank lacked standing to pursue the foreclosure action. See Drew v. Chase Manhattan Bank, N.A., No. 95-cv-3133 (JGK), 1998 WL 430549, at *5-6 (S.D.N.Y. July 30, 1998) (dismissing claims that the defendants had obtained a foreclosure judgment by making false representations and violated the plaintiff's constitutional rights for lack of jurisdiction under the Rooker Feldman doctrine). In fact, Graham even seeks an injunction against the public auction of his home; this claim for relief further underscores that Graham's standing

claims attack the substance of the foreclosure judgment. See Feinstein v. Chase Manhattan Bank, No. 06-cv-1512 (JFB) (ARL), 2006 WL 898076, at *1-2 (E.D.N.Y. Apr. 5, 2006).

Reading the Verified Complaint as a whole, it is clear that Graham disputes the validity of the underlying state foreclosure judgment. Graham argues, among other things, that "Plaintiff's property was not acquired pursuant to the assignment of mortgage," Verified Compl. ¶ 74, Count 7 for Security Law Violations; "US Bank violated and continue[s] to violate New York State and Federal debt collection laws in that they have claimed, threatened[,] and are attempting to enforce an obligation or are engaging in a debt collection scheme when they knew or reasonably should have known the debt claims are fake, fabricated and illegitimate." Verified Compl. ¶ 87, Count 8 for Debt Collection Law violations; "US Bank violated the federal false claims act. It alleged in its foreclosure action that it and the Trust is the owner and holder of the mortgage and note by operation of the ex post facto assignment, false affidavits and failure of compliance." Verified Compl. ¶ 92, Count 9 for violations of the False Claims Act; "US Bank would and did use void or counterfeit assignments . . . to deceive and mislead the Plaintiff . . . into believing that such an assignment could lawfully transfer an interest to the Trust or US Bank well after

the closing of the trust." Verified Compl. ¶ 97, Count 10 for
aiding and abetting securities fraud; "In addition to the lack
of standing of the non-existent plaintiff at inception of the
New York State foreclosure action proceedings there has been
continuous practice of fraud upon the court[.]" Verified Compl.
¶ 119, Count 11 for civil rights violations; "Plaintiff has no
adequate remedy at law because it is impossible for Plaintiff to
calculate the precise amount of damages it will suffer to vacate
the judgment of foreclosure and sale[.]" Verified Compl. ¶ 131,
Count 12 for an injunction. All the foregoing arguments are
premised on a finding by this Court that the state court's
judgment of foreclosure was defective. Thus, Counts 7-12
constitute an improper attempt to have this Court review and
reject a final judgment by the state court.

Graham did not bring all the claims in the state court
proceeding that are presently brought in this case, such as the
securities claim or the False Claims Act claim. But it is clear
that the claims and allegations of the Verified Complaint are
"inextricably intertwined" with the state court's determination
that U.S. Bank had standing to bring the foreclosure action. See
Hoblock, 422 F.3d at 87. Graham's claims seek to review and
reject the judgment of foreclosure on the grounds that the
assignments were invalid and that U.S. Bank had no right to the

14

property at issue in the foreclosure proceeding. These claims implicate the validity of the state court judgment of foreclosure. In Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (per curiam), the Court of Appeals concluded that where a plaintiff asks the federal court to determine that the defendant mortgagee lacked standing in a foreclosure action, the Rooker Feldman doctrine bars the plaintiff's claims which are in essence "asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose." Graham's standing claims seek the same relief from this Court— that the Court reject the state court judgment or otherwise conclude, in finding that U.S. Bank committed securities fraud or violated the False Claims Act, that U.S. Bank did not in fact have standing to obtain the foreclosure because it had no interest in the mortgage note, and thus, that the state foreclosure judgment was improper. The Court cannot grant that relief.

Moreover, the same standing issue that underlies Graham's claims against U.S. Bank in this litigation was also before the state court. See Pelsinger Decl., Ex. 4, at 2 ("Although [Graham's] arguments on the motion for an order of reference

that [U.S. Bank] lacked standing were rejected by the court,
[Graham] again raises the standing issue on the different
Assignment of Mortgage."). To the extent Graham invites this
Court to overturn the decision of the Supreme Court in
Westchester County with regards to standing, this Court lacks
jurisdiction. See Hoblock, 422 F.3d at 85; Swiatkowski v.
Citibank, 745 F. Supp. 2d 150, 166 (E.D.N.Y. 2010) (dismissing
on Rooker Feldman grounds claims that a state court foreclosure
action was obtained using fraudulent documents and that the
documents were thereafter misused in a bankruptcy proceeding).

Graham contends that his securities fraud whistleblower and
debt collection violation claims are exempt from the application
of the Rooker Feldman doctrine under a fraud or deception
exception. But the Second Circuit has "never recognized a
blanket fraud exception to Rooker Feldman." Kropelnicki v.
Siegel, 290 F.3d 118, 128 (2d Cir. 2002) (internal quotation
marks and citation omitted); Swiatkowski, 745 F. Supp. 2d at
166. In Kropelnicki, the plaintiff asserted she was kept out of
the state court proceedings due to the defendant's fraud, but
the Court of Appeals nevertheless concluded that the plaintiff
had failed to show an adequate reason that precluded her from
raising her claims in state court. The Court of Appeals stated
that the plaintiff had to show "some factor independent of the

actions of the opposing party that precluded [her] from raising [her] federal claims." Id. at 128-29 (internal quotation marks and citations omitted). Here, not only are Graham's fraud allegations inextricably intertwined with the state court judgment, but Graham already had an opportunity to raise the possibility of fraud with the state court. Graham initially defaulted when U.S. Bank filed the complaint seeking foreclosure, but Graham subsequently opposed U.S. Bank's motion for a judgment of foreclosure. Graham argued repeatedly that U.S. Bank had submitted the wrong documentation of an assignment. McCord Decl., Ex. K. ¶ 49 (claiming that U.S. Bank's assignment documentation was "potentially invalid and fraudulent"). Having had a full and fair opportunity to litigate the issue of fraud in state court, Graham cannot resort to federal court to challenge the state court's foreclosure judgment and determination that U.S. Bank had not acted fraudulently. Kropelnicki, 290 F.3d at 129; see also Russ v. Alt. Loan Tr. 2006-43-CB Mortg. Pass Through Certificates 2006-43-CB, No. 14-cv-2990 (CM), 2014 WL 3703870, at *1, 3 (S.D.N.Y. July 23, 2014) (dismissing a plaintiff's claims that the defendant bank used counterfeit records to obtain a judgment of foreclosure and pending order of sale on Rooker Feldman grounds). Therefore, the Rooker Feldman doctrine bars claims

relating to allegations of fraud by U.S. Bank and claims that seek to attack the state court's determination that U.S. Bank had standing to assert a default on the mortgage and to seek a foreclosure. Thus, this Court lacks subject matter jurisdiction over Counts 7-12 of the Verified Complaint.

Moreover, the standing claims are also barred under the doctrine of collateral estoppel or issue preclusion. A court may dismiss a claim on collateral estoppel grounds on a motion to dismiss. See Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (affirming a 12(b)(6) dismissal on res judicata grounds); Lawtone-Bowles v. City of New York, Dep't of Sanitation, 22 F. Supp. 3d 341, 348-49 (S.D.N.Y. 2014) (concluding, on a 12(b)(6) motion, that the plaintiff's ADA claims were barred by collateral estoppel because the same issues had been litigated in an Article 78 proceeding). The federal full faith and credit statute provides, in relevant part, that the "judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. Under the full faith and credit statute, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the

judgment was rendered." <u>Migra v. Warren City Sch. Dist. Bd. of</u> <u>Educ.</u>, 465 U.S. 75, 81 (1984). Therefore, New York law governs this Court's collateral estoppel analysis.

The doctrine of collateral estoppel—also known as issue preclusion—prohibits a party from re-litigating an issue in certain circumstances. Under New York law, collateral estoppel bars claims where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." <u>Colon v. Coughlin</u>, 58 F.3d 865, 869 (2d Cir. 1995) (citations omitted); <u>see also</u> <u>Phifer v. City of New York</u>, 289 F.3d 49, 56 (2d Cir. 2002). "Collateral estoppel is a flexible doctrine and whether to apply it in a particular case depends on general notions of fairness involving a practical inquiry into the realities of the litigation." <u>Peterson v. City of New York</u>, No. 11-cv-3141 (DLC), 2012 WL 2148181, at *1 (S.D.N.Y. June 13, 2012) (citation omitted); <u>see also</u> <u>Lawtone-Bowles</u>, 22 F. Supp. 3d at 348. The parties asserting issue preclusion, the defendants, bear the burden of showing that the identical issue was previously decided, while the plaintiff bears the burden of showing the absence of a full and fair opportunity to litigate

the issue in the prior proceeding. <u>See</u> <u>Colon</u>, 58 F.3d at 869;
<u>Lawtone-Bowles</u>, 22 F. Supp. 3d at 348.

In this case, the argument that U.S. Bank lacked standing
to pursue the foreclosure action is a necessary predicate to all
of Graham's standing claims. The state court already determined
that U.S. Bank had standing to bring the foreclosure action.
McCord Decl., Ex. L. Even though the specific causes of action
alleged in Counts 7-12 of the Verified Complaint were not
litigated in state court, each of them depends on the argument
that the state court foreclosure was invalid because U.S. Bank
lacked standing to obtain it as a result of the allegedly
invalid assignments.[2] Graham made this argument when he cross
moved to dismiss the foreclosure action. Graham made the
argument again as part of his opposition to the plaintiff's
motion for a judgment of foreclosure when he argued that the
assignments on which U.S. Bank was relying were "potentially
invalid and fraudulent." McCord Decl., Ex. K. ¶ 49. The state
court rejected the standing argument on the motion for an order

---

[2] Graham also argues that he "only recently discovered the numerous securities
and debt collection violations committed by US Bank regarding the assignment
of the mortgage and sale of the mortgage note." Pl.'s Mem. of Law in Opp'n to
Mot. at 6. This argument fails because Graham's securities and debt
collection claims depend on his argument that U.S. Bank lacked standing to
pursue the foreclosure action. The standing argument implicates the validity
of the assignments and sale of the mortgage note and in turn, the validity of
the state court judgment of foreclosure. The claims that depend on U.S.
Bank's lack of standing in the foreclosure action are barred by the <u>Rooker
Feldman</u> doctrine and by collateral estoppel.

of reference, and the state court rejected it again when U.S. Bank moved to confirm the referee's report and for a judgment of foreclosure. Pelsinger Decl., Ex. 4, at 2. Therefore, it is clear that the issue of standing was necessarily decided by the state court because without deciding that U.S. Bank had standing, the foreclosure action could not have proceeded.

The claim that U.S. Bank lacked standing to pursue the foreclosure action was rejected by the state court. But that claim is at the core of the plaintiff's standing claims—namely that U.S. Bank falsely claimed that it did own the mortgage and that it could pursue the foreclosure. See, e.g., Verified Compl. ¶¶ 74, 88, 92, 97, 119. Thus, collateral estoppel bars Graham's standing claims because those claims are predicated on issues litigated and decided in the state foreclosure proceeding. Therefore, on this ground as well, the motion to dismiss Counts 7-12 should be granted.

**B.**

The gist of Graham's second set of claims, the loan modification claims, is that SPS offered Graham a loan modification for the mortgage after Graham defaulted on his payments. Verified Compl. ¶¶ 18, 31-32. Graham allegedly made monthly payments pursuant to the loan modification agreement, and SPS accepted five mortgage payments, totaling $12,685.00.

21

Verified Compl. ¶ 23. However, according to Graham, SPS never advised Graham whether he received final approval or whether the loan modification was effective. Verified Compl. ¶ 35. On this basis, Graham asserts a claim for fraud, arguing that SPS and U.S. Bank concealed material facts and did not "reveal their secret intentions" to induce Graham to make payments and then refuse to credit the payments to his account. Verified Compl. ¶ 36. Graham also asserts that SPS breached the loan modification agreement and breached the implied covenant of good faith and fair dealing, and if there was no agreement, that SPS was unjustly enriched by the payments it received.

The defendants argue that like the standing claims, the loan modification claims alleging fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, and deceptive business practices under New York law, are barred by the Rooker Feldman doctrine or alternatively, collateral estoppel or res judicata.

The Rooker Feldman doctrine does not apply to the loan modification claims. The loan modification claims satisfy the procedural requirements of the Rooker Feldman doctrine because Graham was the losing party in a state court action in which a judgment was rendered before Graham brought the present action

in federal court. See Hoblock, 422 F.3d at 85.[3] But this case does not satisfy the substantive requirements of the Rooker Feldman doctrine: that the plaintiff complain of an injury from a state-court judgment and that the plaintiff seek federal-court review and rejection of the state-court judgment. See id. The causes of action for fraud, breach of contract, breach of the implied covenant of good faith, unjust enrichment, conversion, and deceptive business practices do not require that this Court review and reject the state foreclosure judgment, nor does the success of Graham's claims depend on this Court's conclusion that the state court improperly entered a judgment of foreclosure. Rather, the loan modification claims focus on the alleged existence and breach of the loan modification agreement and the fact that Graham made several payments to SPS. Whether Graham should receive a full refund of the loan modification payments or whether SPS breached that alleged agreement does not require this Court to review and reject the state court's foreclosure judgment. See Nivia v. Nation Star Mortg., LLC, 620 F. App'x 822, 824-25 (11th Cir. 2015) (per curiam) (concluding

---

[3] Graham asserts the breach of contract, breach of the implied covenant of good faith, and deceptive business practices claims only against SPS which was not a party to the state foreclosure action. The fact that SPS was not a party to the state foreclosure action does not bar the application of the Rooker Feldman doctrine. See Best v. Bank of Am., N.A., No. 14-cv-6546, 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015) ("[T]he Rooker Feldman doctrine does not require that the federal-court defendant have been a party in the prior state court proceeding.").

that <u>Rooker Feldman</u> did not bar claims relating to failure, in part, to agree to a loan modification where the failure occurred after the foreclosure occurred).

It is true that here, the alleged loan modification predates the foreclosure action. But under the <u>Rooker Feldman</u> doctrine, a claim is barred "only if it complains of injury from the state-court judgment and seeks review and rejection of that judgment, but not if it raises 'some independent claim.'" <u>See Hoblock</u>, 422 F.3d at 86. The fraud Graham alleges in his loan modification claims is not a fraud that allegedly took place during the course of the foreclosure proceeding. Rather the purported fraud occurred when SPS allegedly offered the loan modification and then allowed Graham to continue making payments that were not credited to Graham's account. Verified Compl. ¶¶ 35-36. The fraud, breach of contract, and other loan modification claims do not require re-litigating issues that the state court decided in the foreclosure proceeding.

The defendants contend that collateral estoppel bars the loan modification claims, but the record does not show that the state court decided any of the issues presented by Graham's loan modification claims. At the argument of the current motion, the defendants' counsel was unable to point to any decision of the state court that decided any issue relating to the claims

arising out of the alleged loan modification agreement. It is true that in his affidavit in the foreclosure action Graham mentioned that he entered into a trial agreement with U.S. Bank, that he made payments of $2,500.00, and that he wished to enter into a loan modification with U.S. Bank. See McCord Decl., Ex. I (Graham Aff.).[4] The loan modification agreement arguments before the state court did not focus on SPS's refusal to provide a refund or credit for the payments, but rather focused on the Graham's alleged good faith efforts to enter into a modification agreement with U.S. Bank. McCord Decl., Ex. I, Affirmation in Opp'n to Pl.'s Mot. for Order of Reference and Cross-Motion to Vacate Default and to Dismiss ¶¶ 25-30. The current arguments of fraud, breach of contract, unjust enrichment, and conversion were not the arguments raised in the foreclosure action. See, e.g., Verified Compl. ¶ 50 ("Defendant [SPS] breached its contract with Plaintiff[] by accepting but failing to properly

---

[4] Graham's current allegations in his Verified Complaint about SPS's breach of the loan modification agreement are inconsistent with the allegations in the affidavit he submitted in the state court action. Graham's position in the state court action was that he was denied a loan modification, but in this case, he brings a claim for breach of contract based on the allegation that he entered into a loan modification agreement and performed his obligation by making monthly payments in the total amount of $12,685.00. Verified Compl. ¶¶ 47-49. In his affidavit in the state court action, Graham stated that "[t]he bank had [him] apply for a loan modification and they offered [him] a trial modification." McCord Decl., Ex. I (Graham Aff. ¶ 5). Graham also stated that he was told if he made three trial payments he would receive a permanent loan modification, and that despite making six payments, he was "denied the modification." Id. ¶ 6. The bank offered him an in-house modification agreement with a monthly payment of $5,000.00 but Graham could not afford it. Id. ¶ 7.

credit and apply [t]he aforesaid mortgage payments made by
Plaintiff[] pursuant to the Loan Modification Agreement.");
Verified Compl. ¶ 58 ("Defendants have been unjustly enriched in
the amount of $12,685.00."). The requirement that the issue have
been litigated in a previous proceeding is not satisfied, and
thus, collateral estoppel does not bar the loan modification
claims. See Lawtone-Bowles, 22 F. Supp. 3d at 348.

   The defendants fare better with their argument that res
judicata bars Graham's loan modification claims because the loan
modification claims arise out of the same set of facts as the
foreclosure proceeding in state court. A federal court looks to
New York law to determine the res judicata or collateral
estoppel effect to afford a decision of a New York court. See
Giannone v. York Tape & Label, Inc., 548 F.3d 191, 192-93 (2d
Cir. 2008) ("[W]hen determining the effect of a state court
judgment, federal courts, including those sitting in diversity,
are required to apply the preclusion law of the rendering
state." (quotation marks and alterations omitted)).

   The doctrine of res judicata or claim preclusion requires a
party to show that "(1) the previous action involved an
adjudication on the merits; (2) the previous action involved the
parties or those in privity with them; and (3) the claims
asserted in the subsequent action were, or could have been,

26

raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (quotation marks and alterations omitted). The party claiming res judicata bears the burden of proving that the second action is barred, and it is not "dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997); see also Carvel v. Franchise Stores Realty Corp., No. 08-cv-8938 (JGK), 2009 WL 4333652, at *4 (S.D.N.Y. Dec. 1, 2009).

Based on the papers presently submitted, it does not appear that Graham asserted any of the current loan modification claims in state court. Rather, Graham appears to have appealed to the state court's equitable powers to vacate his default, allow him to file an answer, and refer the case to a settlement conference based on his willingness to enter into a reasonable loan modification. McCord Decl., Ex. I. But it is also clear that Graham brought to the attention of the state court that he made payments of $2,500.00 a month for six months pursuant to a trial modification. He claimed that he was told that he would be afforded a permanent loan modification if he made three payments, but he was denied the modification. McCord Decl., Ex. I (Graham Aff. ¶¶ 5-7).

New York applies a "transactional approach" to the doctrine of res judicata, so that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." <u>Yeiser v. GMAC Mortg. Corp.</u>, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008)(internal citations and quotation marks omitted). Res judicata may apply even when the parties to the present action are different from the parties in the preceding action so long as the parties are in privity. A servicer, such as SPS, can be in privity with the mortgagee that the servicer represents. <u>See id.</u> at 423; <u>see also Swiatkowski</u>, 745 F. Supp. 2d at 171 n.12.

New York courts have held that a defendant in a foreclosure action should assert claims for breach of contractual obligations under the mortgage agreement as defenses against the plaintiff lender in the original foreclosure action. <u>See, e.g.</u>, <u>SSJ Dev. of Sheepshead Bay I, LLC v. Amalgamated Bank</u>, 10 N.Y.S.3d 105, 108 (App. Div. 2015) ("[A] judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and concludes all matters of defense which were or might have been litigated in the foreclosure action." (internal quotation marks omitted)); <u>New Horizons Inv'rs v. Marine Midland Bank</u>, 669 N.Y.S.2d 666,

667 (App. Div. 1998) ("The issues raised by the plaintiffs in the instant case concern the parties' rights and obligations under the mortgage agreement and could have been raised as equitable defenses in the foreclosure action."); see also Yeiser, 535 F. Supp. 2d at 421 ("[Res judicata] applies to defenses that could have been litigated, including defenses to a foreclosure.").

The gist of Counts 1-6 is that SPS entered into a loan modification agreement with the plaintiff and accepted five payments, but failed to credit them properly to the mortgage in breach of the contract (Count 2) and in breach of the implied covenant of good faith (Count 3). By keeping the payments, SPS and U.S. Bank were unjustly enriched (Count 4) and converted those payments (Count 5). SPS deceived the plaintiff into believing that the loan modification agreement would be accepted (Count 6), and SPS and U.S. Bank are liable for fraud for leading the plaintiff to believe that the loan modification would be approved (Count 1). All of these claims relate to a purported loan modification agreement and payments pursuant to that agreement.

In Duncan v. U.S. Bank, the Sixth Circuit Court of Appeals affirmed the dismissal of similar claims as barred by Ohio's law of res judicata based on the fact that they could have been

raised in a foreclosure action. 574 F. App'x 599, 601 (6th Cir. Jul. 25, 2014) (summary order). In Duncan, the plaintiffs alleged that the defendants, U.S. Bank and SPS, had instructed the plaintiffs to stop making the payments required by a loan modification agreement and then commenced a foreclosure action against the plaintiffs. Duncan v. U.S. Bank, Nat'l Ass'n, 11-cv-913, 2013 WL 5408264, at * 1-*3 & n.1 (S.D. Oh. Sept. 25, 2013). The district court concluded that the claims for breach of contract, promissory estoppel, fraud, and unjust enrichment arising from the defendants' alleged misconduct should have been raised in the state court foreclosure proceeding. Id. at *3, *5 ("This action arises out of the same transaction or occurrence that was at issue in the foreclosure action—the existence of a mortgage loan between the parties and plaintiffs' nonpayment[.] . . . [T]his action raises claims that could have been litigated in the first action."). The Sixth Circuit Court of Appeals affirmed the district court's dismissal of the breach of contract, promissory estoppel, and fraud claims based on Ohio res judicata law which is materially the same as New York res judicata law. Duncan, 574 F. App'x at 602.

In this case, Graham could have brought his loan modification claims in the state foreclosure action. At bottom, his claims in Counts 1-6 for fraud, breach of contract, breach

of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, and deceptive business practices arise out of Graham's default on his mortgage loan payments. See id. Graham's claims that he made payments to SPS and that the payments were not properly credited to his account, are issues that "concern the parties' rights and obligations under the mortgage agreement" and should have been raised in the state foreclosure action. See New Horizons Inv'rs, 669 N.Y.S.2d at 667. To the extent that there was an effective loan modification agreement that U.S. Bank failed to comply with, that could have been raised as a defense to the foreclosure action.[5]

---

[5] Graham is barred by res judicata notwithstanding the fact that he defaulted in the state court foreclosure proceeding. "Under New York law, a default judgment generally bars litigation of issues that were, or could have been, determined in the prior action." Tantillo v. Giglio, 549 N.Y.S.2d 432, 433 (App. Div. 1989). Graham defaulted in the state court action and then sought to vacate the default. He argued that he did not realize he needed to answer the summons and was in the process of negotiating a loan modification. See McCord Decl., Ex. I (Reply Affirmation in Further Support of the Defendant's Motion to Vacate ¶¶ 7-8). Graham argued that one of his lawyers failed to inform him that he needed to file an answer. Id. ¶¶ 10-12. The state court denied Graham's motion to vacate the default judgment and concluded that his motion lacked merit. McCord Decl., Ex. J. Under very similar facts, the Appellate Division affirmed a dismissal on res judicata grounds where a bank obtained a default judgment against plaintiffs and the plaintiffs unsuccessfully moved to vacate the default citing their lawyers' ineffectiveness. After the judgment of foreclosure, the plaintiffs commenced a new action against the bank, asserting claims of fraud and malfeasance in the administration of their mortgage loan. The Appellate Division concluded that although New York has a permissive rule as to counterclaims, the claims in the second action could have been raised as defenses in the foreclosure proceeding and were barred by res judicata. Se Dae Yang v. Korea First Bank, 668 N.Y.S.2d 363, 363-64 (App. Div. 1998). Similarly here, the claims that Graham asserts against SPS and U.S. Bank could have been raised as defenses in the foreclosure proceeding, and are therefore barred by res judicata.

Moreover, the amount of the outstanding loan was itself an issue in the state court foreclosure proceeding. The failure to credit amounts that were in fact paid was an issue that should have been raised in the foreclosure action. The state court calculated the amount due on Graham's note and the amount of mortgage payments in default during the foreclosure proceeding. See McCord Decl., Ex. L. Graham could have raised the issue of the uncredited payments before the state court and could have sought to deduct the payments from the amount he owed. Graham actually did challenge the amount the referee calculated as being due, arguing that the interest rate had been improperly calculated, but there is no indication that he argued that the amount he owed should be reduced by the payments he allegedly made pursuant to the loan modification agreement. See id. Having had the opportunity to challenge the amount he owed, Graham cannot bring alternative claims that are premised on theories that were available to him and that he could have argued at the time of the state foreclosure proceeding. Based on the Court's review of the record, the allegations about SPS's alleged failure to credit Graham's account for the five monthly payments he allegedly made, the unjust enrichment of the defendants, and the defendants' alleged conversion of the payments, are within the same nucleus of facts as the facts of the foreclosure

action. Thus, res judicata bars the loan modification claims,
Counts 1-6, in this case. Counts 1-6 should therefore be
dismissed.

## IV.

### A.

The defendants also moved to dismiss Graham's loan
modification claims, Counts 1-6, for failure to state a claim.
Counts 1-6 are barred by res judicata, but in the interest of
completeness, it is useful to consider the arguments that the
defendants make in support of dismissing Counts 1-6 of Graham's
complaint. For the reasons explained below, Counts 1, 3, 5, and
6 also fail to state a claim for which relief may be granted.
Counts 2 and 4 would successfully state a claim for breach of
contract and unjust enrichment were they not barred by res
judicata.

### 1.

The defendants move to dismiss Count 1, Graham's fraud
claim, for failure to plead with particularity the circumstances
constituting fraud, as required by Federal Rule of Civil
Procedure 9(b) and because the claim is duplicative of Count 2,
Graham's breach of contract claim. "[W]here a fraud claim arises
out of the same facts as plaintiff's breach of contract claim,

with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001). The alleged misrepresentation was that SPS told Graham that the loan modification agreement would be approved and that Graham was induced into continuing to make payments while the defendants never had any intention of crediting those payments to Graham's accounts. Verified Compl. ¶¶ 33-36. These allegations of concealment and fraud go to the core of the breach of contract claim: the defendants did not intend to carry out the alleged loan modification agreement.

Moreover, the fraud claim in the Verified Complaint is improperly pleaded under Rule 9(b) of the Federal Rules of Civil Procedure because the allegations do not specify with particularity which misrepresentations were made by which defendant. See DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) ("[F]raud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the

fraud." (internal citations omitted)). Thus, Count 1, alleging fraud, should be dismissed.

**2.**

Similarly, the defendants move to dismiss Count 3, Graham's cause of action alleging a breach of the implied covenant of good faith and fair dealing, arguing that this claim too, like the fraud claim, is duplicative of the breach of contract claim. Under New York law, to state a claim for breach of the implied covenant, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce, 697 N.Y.S.2d 128, 130 (App. Div. 1999). A claim for breach of the implied covenant of good faith is redundant if it "arose from the same facts and sought identical damages" as the breach of contract claim. Havell Capital Enhanced Mun. Income Fund, L.P. v. Citibank, N.A., 923 N.Y.S.2d 479, 481 (App. Div. 2011); Ward v. TheLadders.com, Inc., 3 F. Supp. 3d 151, 164 (S.D.N.Y. 2014).

The Verified Complaint alleges that "[a]s a result of Defendant's actions related to the Loan Modification Agreement entered into with Plaintiff, Defendant-SPS violated the implied covenant of good faith and fair dealing[.]" Verified Compl. ¶ 55. These allegations, accepted as true, are the same factual

allegations on which Graham bases his breach of contract claim. Graham does not attempt to explain in his papers in opposition whether or how the violation of the implied covenant of good faith and fair dealing claim is distinct from the breach of contract claim. Therefore, Count 3 alleging a violation of the implied covenant of good faith and fair dealing is also dismissed.

**3.**

The defendants also move to dismiss Count 5, Graham's claim for conversion. If a plaintiff brings a breach of contract claim, a conversion claim can only "succeed if the party alleges a wrong that is distinct from any contractual obligations." See Command Cinema Corp. v. VCA Labs, Inc., 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006). "[A] plaintiff must show acts that were unlawful or wrongful as opposed to violations of contractual rights." Id.; see also Picture Patents, LLC v. Aeropostale, Inc., No. 07-cv-5567 (JGK), 2009 WL 2569121, at *2 (S.D.N.Y. Aug. 19, 2009). Graham alleges that SPS and U.S. Bank "wrongfully and unlawfully accepted" his monthly mortgage payments, totaling $ 12,685.00, without crediting his account. Verified Compl. ¶ 61. But these allegations overlap with Graham's breach of contract allegations. Graham's conversion claim merely seeks to enforce the loan modification agreement.

36

Moreover, the conversion claim also fails because it is barred by the statute of limitations. Conversion claims are subject to a three-year statute of limitations, which begins to run when the alleged conversion takes place. See Ferring B.V. v. Allergan, Inc., 932 F. Supp. 2d 493, 510 (S.D.N.Y. 2013); N.Y. C.P.L.R. § 214(3). According to the Verified Complaint, Graham's last mortgage payment pursuant to the loan modification agreement was made in October 2011, and the Verified Complaint was filed in 2015, far outside the three-year statute of limitations. Thus, Count 5, alleging conversion, should be dismissed.

### 4.

The defendants move to dismiss Count 6, asserting violations of New York's Deceptive Practice statute, New York General Business Law § 349. New York's consumer protection law prohibits "[d]eceptive acts or practices in the conduct of any business." N.Y. Gen. Bus. L. § 349(a). Any person injured by a violation of the law may bring an action to recover damages. See id. § 349(h). Under New York law, "[a] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 731

N.E.2d 608, 611 (N.Y. 2000); see also Ward, 3 F. Supp. 3d at
168. A § 349 claim is subject to a three-year statute of
limitations, and the claim accrues on the date of the alleged
deceptive act. Corsello v. Verizon New York, Inc., 967 N.E.2d
1177, 1184 (N.Y. 2012). Here, Graham does not allege any actions
that took place after his last payment on October 2011, and he
filed the Verified Complaint in January 2015, outside the
statute of limitations. Moreover, the Verified Complaint also
does not plead how the defendants' allegedly misleading
practices would affect the consuming public at large. See New
York Univ. v. Cont'l Ins. Co., 662 N.E.2d 763, 770 (N.Y. 1995)
("[The] defendant's acts or practices must have a broad impact
on consumers at large; private contract disputes unique to the
parties would not fall within the ambit of the statute."
(internal alterations and quotation marks omitted)). Therefore,
Count 6 should also be dismissed.

### 5.

The defendants also moved to dismiss Graham's breach of
contract claim, Count 2, arguing that Graham has failed to show
the existence of a loan modification contract.

Under New York law, the elements of a cause of action for
breach of contract are: "(1) the existence of a contract, (2)
the plaintiff's performance under the contract, (3) the

defendant's breach of the contract, and (4) resulting damages."
Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 921
N.Y.S.2d 260, 264 (App. Div. 2011). "Generally, a party alleging
a breach of contract must demonstrate the existence of a
contract reflecting the terms and conditions of their purported
agreement." Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d
1104, 1110 (N.Y. 2011) (internal quotation marks and citation
omitted); see also Ward, 3 F. Supp. 3d at 158. Here, Graham has
alleged that SPS approached him with an offer to modify the
terms of the mortgage payments to reduce the monthly payments
and that he subsequently made and SPS accepted five monthly
payments. There is sufficient notice of the claim of breach of
contract. The Verified Complaint alleges that there was a loan
modification agreement between SPS and Graham, that Graham made
several payments pursuant to that agreement, and that SPS
breached the agreement. The defendants incorrectly characterize
the breach of contract claim as alleging that the defendants
breached the contract by refusing to enter into a loan
modification agreement. But the Verified Complaint clearly
alleges that SPS "breached its contract . . . by accepting but
failing to properly credit and apply [t]he aforesaid mortgage
payments" to Graham's account. Verified Compl. ¶ 50. The

allegations in the Verified Complaint would be sufficient to state a claim for breach of contract.

## 6.

The defendants also argue that the unjust enrichment claim, Count 4 of the Verified Complaint, should be dismissed because quasi-contract claims are not available if there is a valid contract in existence. This argument is inconsistent with the defendants' position on the breach of contract claim that there never was a contract. It is true as a matter of New York law that "equitable quasi-contractual relief for restitution and unjust enrichment is unavailable, where . . . the parties' obligations and potential liabilities are governed by the terms of their valid written agreement." DePinto v. Ashley Scott, Inc., 635 N.Y.S.2d 215, 216–17 (App. Div. 1995); Ward, 3 F. Supp. 3d at 165. However, in this case, where the existence of a contract is in dispute, Graham would not be precluded from asserting a quasi-contract claim as an alternative to the breach of contract claim. See, e.g., Hoyle v. Dimond, 612 F. Supp. 2d 225, 231 (W.D.N.Y. 2009).

## B.

In response to the defendants' motion to dismiss Graham's complaint for failure to state a claim, Graham failed to address the defendants' substantive arguments concerning Counts 7-12.

Graham's opposition to the motion to dismiss did not deal with the authorities cited by the defendants nor did it challenge the defendants' arguments. Because the plaintiff did not address those arguments, these claims have been abandoned. See, e.g., Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2008). Therefore, in addition to dismissing those claims on 12(b)(1) grounds as explained above, Claims 7-12 are dismissed on this ground as well.

Moreover, the defendants' arguments in support of dismissing Counts 7-12 of Graham's Verified Complaint are persuasive on the merits.

**1.**

With respect to Count 7, Graham argues that U.S. Bank falsely represented that it owned Graham's mortgage and made material misrepresentation in contravention of federal securities laws. Verified Compl. ¶¶ 73-74. Graham also contends that U.S. Bank failed to comply with Generally Accepted Accounting Principles and seeks a whistleblower award under the Dodd Frank Wall Street Reform Act. Verified Compl. ¶ 84. The defendants correctly point out that the Verified Complaint fails to plead facts showing a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. The

private right of action under Section 10(b) and Rule 10b-5 is
reserved only for purchasers or sellers of securities, and
Graham does not claim to be either. Blue Chip Stamps v. Manor
Drug Stores, 421 U.S. 723, 739-40 (1975). And with respect to
Graham's whistleblower argument and claim that he is entitled to
a whistleblower award, Graham does not allege facts showing that
he satisfies the requirements or procedures for a whistleblower
under the Dodd Frank Wall Street Reform Act. See 15 U.S.C. §
78u-6(a)(6) (defining "whistleblower"), 17 C.F.R. § 240.21F-3
(award eligibility); Obal v. Deutsche Bank Nat'l Tr. Co., 14-cv-
2463, 2015 WL 631404, at *4 (S.D.N.Y. Feb. 13, 2015) ("The
whistleblower provision of the Dodd Frank Act does not provide a
private right of action. Rather, it only provides for monetary
payments to 'whistleblowers who voluntarily provided original
information to the Commission that led to . . . successful
enforcement.' 15 U.S.C. § 78u-6(b)(1)."). Therefore, Count 7
should be dismissed.

## 2.

With respect to Count 8 for violations of the fair debt
collection laws against U.S. Bank, the defendants contend that
U.S. Bank is not a "debt collector" under the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.
Creditors are not considered debt collectors under the FDCPA.

Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d
Cir. 1998). Graham's FDCPA claim fails as a matter of law
because U.S. Bank, which was acting as a creditor, is not a
"debt collector" under the FDCPA. See Williams v. Countrywide
Home Loans, Inc., 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007)
("Mortgage companies collecting debts are not 'debt
collectors.'"), aff'd, 269 F. App'x 523 (5th Cir. 2008); Somin
v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 159 (E.D.N.Y.
2007) ("[T]he FDCPA limits its reach to those collecting the
dues 'of another' and does not restrict the activities of
creditors seeking to collect their own debts."). The state law
debt collection practices claim under New York General Business
Law Article 29-H also fails because New York does not recognize
a private right of action for violations of Article 29-H. See
Varela v. Inv'rs Ins. Holding Corp., 615 N.E.2d 218, 219 (N.Y.
1993) ("Insofar as plaintiffs rely upon article 29-H of the
General Business Law, which regulates debt collection practices,
their claim fails because the article does not create a private
cause of action, but authorizes only the Attorney-General or a
District Attorney to commence an action for violation of its
provisions."). Therefore, Count 8 should also be dismissed.

**3.**

The defendants also move to dismiss Count 9 alleging a violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq. on the grounds that Graham failed to comply with the procedural requirements for bringing an FCA claim and has not pleaded with particularity the facts giving rise to fraud. Section 3730 requires that an FCA claim be brought in the name of the federal government and that the complaint be filed in camera and remain under seal for at least 60 days. 31 U.S.C. § 3730(b)(1)-(2). Graham's Verified Complaint does not satisfy these procedural requirements. Moreover, to plead an FCA claim, a plaintiff must comply with Federal Rule of Civil Procedure 9(b). Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995) (per curiam). As the defendants point out, the Verified Complaint does not allege that U.S. Bank presented fraudulent claims for payment to the United States government nor does the Verified Complaint allege with particularity facts showing that U.S. Bank knew the assignments were defective from the start. Thus, Count 9 should also be dismissed on this ground.

**4.**

Count 10, alleging that U.S. Bank aided and abetted securities fraud, similarly fails because Graham has not pleaded

with particularity facts showing that U.S. Bank assisted the Trust in committing securities fraud and knew that the assignments of the note were defective. Verified Compl. ¶¶ 107-08; see Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006) ("To establish liability for aiding and abetting fraud, the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." (internal citation and quotation marks omitted) (alteration in the original)); Fed. R. Civ. P. 9(b). Thus, Count 10 should also be dismissed.

### 5.

The defendants also move to dismiss Count 11, alleging that U.S. Bank violated Graham's civil rights in contravention of 42 U.S.C. § 1983. The defendants correctly point out that U.S. Bank is not a state actor. A private entity cannot be liable § 1983 unless it has acted under color of state law. To act under color of state law the private entity's action must be "fairly attributable to the state." McGugan v. Aldana-Bernier, 752 F.3d 224, 229 (2d Cir. 2014) (internal quotation marks omitted). The Verified Complaint argues that § 1983 should apply against "banking persons" and the state court, and contends that Graham's rights have been violated by fraud and deception in the

state court. The fact that a private entity uses the state courts does not transform the private party into a state actor. See Kamasinski v. Rubin, 764 F. Supp. 741, 743 (D. Conn. 1991) ("[U]se by a private party of the state courts for litigation 'does not clothe persons who use its judicial processes with the authority of the state,' as contemplated under the § 1983 state action requirement." (quoting Stevens v. Frick, 372 F.2d 378, 381 (2d Cir. 1967), aff'd, 962 F.2d 3 (2d Cir. 1992)). Thus, Count 11 should be dismissed.

### 6.

Count 12 seeking an injunction enjoining U.S. Bank from selling the property should be denied as moot. The record reflects that the property was sold at an auction on January 16, 2015, McCord Decl., Ex. N, and during the argument of the current motion, the parties confirmed that the sale occurred. Thus, an injunction enjoining the auction could not provide Graham any relief.

### C.

Graham seeks leave to amend the complaint. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be "freely given when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962); Nerney v. Valente & Sons Repair

Shop, 66 F.3d 25, 28 (2d Cir. 1995). Valid reasons for denying leave to amend include undue delay, undue prejudice to the opposing party, bad faith or dilatory motive on the part of the movant, and futility of the amendment. Foman, 371 U.S. at 182; Mackensworth v. S.S. Am. Merch., 28 F.3d 246, 251 (2d Cir. 1994). Generally, the "grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Sanders v. Venture Stores, Inc., 56 F.3d 771, 773 (7th Cir. 1995) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)). When leave to amend would be futile, that is a sufficient reason to deny the plaintiff leave to amend. Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995); see also Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y. 1996).

In this case, the loan modification claims, Counts 1-6, are dismissed with prejudice because they are barred by res judicata and any further amendment would be futile. The standing claims, Counts 7-12, which have been dismissed for lack of subject matter jurisdiction are also dismissed with prejudice because supplemental pleading will not cure the jurisdictional defect under the Rooker Feldman doctrine. The claims are also barred by collateral estoppel, and the plaintiff has not attempted to

respond to the defendants' specific arguments against Counts 7-12.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, they are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted.** The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          January 18, 2016

_____/s/_____

John G. Koeltl
United States District Judge